## IN THE UNITED STATES DISTRICT COURT
## FOF THE SOUTHERN DISTRICT OF WEST VIRGINIA
## (HUNTINGTON DIVISION)

ROLAND ALBRIGHT,

      Plaintiff,

v.                                         Civil Action No.: 3:23-cv-00707

ASPLUNDH TREE EXPERT, LLC and
AMERICAN ELECTRIC POWER COMPANY, INC.
d/b/a AMERICAN ELECTRIC POWER,

      Defendants.

## COMPLAINT

**COMES NOW** Plaintiff Roland Albright and, for his *Complaint* against the Defendants,

alleges as follows:

### PARTIES

1.     Plaintiff Roland Albright is a resident and citizen of Branchland, Lincoln County,

West Virginia.  At all relevant times, he was employed by Asplundh Tree Expert, LLC.  He was

not employed by any other company or entity at any relevant time.

2.     Defendant Asplundh Tree Expert, LLC ("Asplundh") is a manager-managed

Pennsylvania limited liability company with managers residing in Willow Grove, Pennsylvania.

At all relevant times, Asplundh engaged in the business of forestry and logging, timber tract

operations and general tree maintenance, including line clearance.  As such, Asplundh was subject

to the jurisdiction of the federal Occupational Safety and Health Administration ("OSHA") and

was responsible for compliance with all applicable OSHA rules and regulations in connection with

its works as well as commonly accepted and well-known consensus industry safety standards.  At

all relevant times, Asplundh was Mr. Albright's sole employer.

3.      Defendant American Electric Power Company, Inc. d/b/a American Electric Power ("AEP") is a New York corporation with its principal place of business located in Columbus, Franklin County, Ohio.  At all relevant times, AEP engaged in the business of providing utility services to customers, including customers in Cabell County, West Virginia.  As part of that business operation, AEP maintained the safe operating condition of its electrical grid.  As such, AEP was subject to OSHA's jurisdiction and was responsible for compliance with all applicable OSHA rules and regulations in the operations associated with said maintenance work as well as commonly accepted and well-known consensus industry safety standards.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 insofar as there exists complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00.

5.      Venue is appropriate because the incident giving rise to this litigation occurred in Cabell County, West Virginia, which is a county within this Court's jurisdiction.

## FACTS

6.      Sometime prior to November 3, 2021, AEP contracted with Asplundh to conduct clearance work around its power lines in Ona, Cabell County, West Virginia.  Specifically, Asplundh was hired to ensure that there was proper clearance for 20 feet on either side of the power lines.  Upon information and belief, the power lines at issue ran 19,900 volts of electricity.  On further information and belief, AEP exercised some degree of supervision and control over the work being performed by Asplundh, including but not limited to policy requirements that it assumed a duty to enforce.

7.      On November 3, 2021, Mr. Albright was employed by Asplundh as a crew foreman. Mr. Albright's crew was dispatched by Asplundh to complete the contract work for AEP in Ona, West Virginia.  While working on that job, Mr. Albright's crew came across two (2) dead pine trees that presented a danger to the AEP power lines, insofar as if they fell, they could hit the power lines and cause damage to the grid.

8.      Mr. Albright and his crew set up a work zone, with the intent of using a bucket truck to clear the dead pines.  Though Mr. Albright and his crew were working near power lines running 19,900 volts of electricity, neither Asplundh nor AEP maintained a policy of grounding the bucket truck during operations near power lines or working near the minimum approach distance ("MAD").  Additionally, Asplundh had no policy requiring the use of rubber gloves or sleeves, or other personal protective equipment ("PPE"), when working near hot power lines.

9.      AEP, upon information and belief, had a policy to barricade off the bucket truck so that employees could not get near the truck, due to the risk of the truck conducting electricity and shocking employees.  However, upon information and belief, AEP's inspectors who routinely visited job sites—including job sites worked by Mr. Albright and his crew—did not enforce this alleged policy or reinforce its importance or significance.

10.     After setting up the worksite, trimmer Bruce Meadows entered the bucket, spotted by trimmer Chris Ritchey, and elevated to the necessary height to work on the dead pines.  At approximately 2:30 p.m., Mr. Meadows had almost completed the work on the pines, and Mr. Ritchey was lowering the bucket via the truck's boom.  Notably, the truck's boom was not completely insulated.

11.     Unbeknownst to Plaintiff or his crew, the bucket and boom, approximately 10 feet from the power lines, were close enough to the hot power lines that the truck could not only

conduct electricity, but that electric charge was powerful enough to arc to another conductor. Neither Plaintiff nor his crew had been properly instructed on the hazard posed by this level of charge, or that electric shock could occur even without making contact with a potentially energized and uninsulated bucket truck.

12.     While the boom was being lowered, Mr. Albright began walking between the guardrail and the truck toward the rear of the truck, with the intent of identifying the pole number for purposes of completing the work production sheet.  While doing so, Mr. Albright sipped a bottle of water and tossed it to the ground, inadvertently in the vicinity of the bucket truck.  When this occurred, the voltage from the power lines flowed through the bucket truck and arced from the truck to the water bottle, and then to Mr. Albright.  The resulting electrical shock, entering Mr. Albright's right index and middle fingers and exiting through his left foot, was powerful enough to knock him backwards and render him unconscious.

13.     As a direct and proximate result of the foregoing events, Mr. Albright suffered numerous severe and permanent injuries, including but not limited to:

      a.     Exit wound in left foot from electrical shock, resulting in permanent hyperpigmented scar;

      b.     Entry wounds in right index and middle fingers from electric shock;

      c.     Cardiac arrhythmia / palpitations;

      d.     Neuropathy, primarily in legs and shoulders;

      e.     Involuntary muscle spasms in lower extremities;

      f.     Paresthesia throughout the body;

      g.     Chest pain and shortness of breath;

      h.     Incontinence;

      i.     Cognitive dysfunction, particularly with regard to memory and concentration;

j.     Major depressive disorder;

k.     Anxiety disorder, unspecified; and,

l.     Personality disorder, unspecified.

14.     In addition to the injuries referenced herein, Mr. Albright has sustained further compensatory damages including, but not limited to:

a.     pain and suffering, including mental anguish;

b.     loss of capacity to enjoy life;

c.     annoyance and inconvenience;

d.     emotional distress;

e.     permanent injuries and impairment;

f.     permanent scarring and disfigurement;

g.     past and future medical expenses;

h.     past and future lost income and earning capacity;

i.     past and future lost services, protection, care and assistance; and,

j.     other damages incurred as a result of Defendants' conduct.

**COUNT I**
**(Deliberate Intent – Asplundh)**

15.     Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 14 of this Complaint as if set forth herein verbatim.

16.     On and prior to November 3, 2021, Asplundh violated W. Va. Code § 23-4-2(d)(2)(B), in that:

(i)     a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(ii)     the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the

high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

(iii)    the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer which rules, regulations and standards were specifically applicable to the work and working condition involved, and were intended to address the specific hazard(s) presented by the alleged specific unsafe working condition;[1]

(iv)    notwithstanding the existence of the facts set forth in subparagraphs (i) through (iii), inclusive, of this paragraph, the person or persons alleged to have actual knowledge under subparagraph (ii) nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and

(v)    Mr. Tibbs suffered a serious compensable injury as defined in section one, article four, chapter twenty-three as a direct and proximate result of the specific unsafe working condition.

17.    As direct and proximate result of Defendants' acts and omissions, Mr. Albright was involved in a crushing incident on September 1, 2017, whereby he sustained severe and permanent injuries described herein and that Plaintiff anticipates will exceed a whole person impairment of 13%.

## COUNT II
### (Negligence – AEP)

18.    Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 17 of this Complaint as if set forth herein verbatim.

19.    As the owner and controller of the power lines at issue, and as a result of its affirmative decision to actively supervise work completed by Asplundh, AEP had a duty to provide a safe workplace for all workers on its power line rights of way or premises.  AEP had authority over, and control of, the workplace and workplace safety under OSHA's multi-employer worksite

---

[1] A verified statement regarding specific unsafe working conditions violated by Asplundh in connection with the work performed on November 3, 2021 will be served alongside the *Complaint*.

protocol. As such, AEP had a duty to ensure that all workers—including Mr. Albright—were equipped with the required personal protective and safety equipment as well as to correct and eliminate any safety hazards present in the workplace. Additionally, AEP had a duty to ensure that contractors it elected to hire were competent and provided adequate safety measures to their workers when active on AEP job site.

20.     AEP, through its agents, servants, representatives and/or employees, negligently breached its duty to Mr. Albright through the following:

a.     Failing to properly ensure that Asplundh maintained the necessary safety measures, including PPE and protocols for working around hot power lines, prior to permitting Asplundh to work on its rights of way;

b.     Failing to properly supervise Mr. Albright's worksite on November 3, 2021;

c.     Failing to develop and implement proper policies and procedures to ensure that the tasks being completed under its direction and on its worksites accounted for the risks of electric shock;

d.     Failing to properly analyze equipment being used on its worksite to ensure that it was safe and effective for the tasks at issue; and,

e.     Failing to provide a safe workplace free of hazards routinely controlled in the industry.

21.     As a direct and proximate result of AEP's actions and omissions on and before November 3, 2021, Mr. Albright sustained the injuries and damages described herein.

22.     Furthermore, AEP's acts and omissions demonstrate that it had a conscious, reckless and outrageous indifference to the health, safety and welfare of the workers on its rights of way, including Mr. Albright.

23.     Punitive damages are justified to punish AEP for its reckless and outrageous indifference to Mr. Albright's safety, which resulted in Mr. Albright's permanent and life-altering injuries.

24.     Punitive damages will serve to deter AEP from continuing to defy basic safety standards, and from placing financial considerations ahead of basic minimal regard for human life, safety, and dignity, thus working to protect future workers and the community at large from such outrageous and indifferent conduct.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, jointly and severally, for:

      a.     an amount of compensatory damages determined by a jury according to the laws of the State of West Virginia;

      b.     an amount of punitive damages determined by a jury according to the laws of the State of West Virginia;

      c.     costs and attorney fees expended in prosecution of this matter;

      d.     pre-judgment and post-judgment interest as provided under the law; and

      e.     any and all other relief to which the Court deems Plaintiff is entitled.

**PLAINTIFF DEMANDS A JURY TRIAL.**

                                        **ROLAND ALBRIGHT,**
                                        By Counsel,

*/s/ J. Ryan Stewart*
J. Ryan Stewart (WV State Bar #10796)
David A. Bosak (WV State Bar # 11947)
BAILEY, JAVINS & CARTER, LC
213 Hale Street
Charleston, WV 25301
(304) 345-0346
rstewart@bjc4u.com
dbosak@bjc4u.com